UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dean L. Knuth,<br><br>                    Plaintiff,<br><br>   v.<br><br>Cap Patrol, LLC Ohio; Cap Patrol, LLC Kentucky; George E. Thurner, III;<br><br>                    Defendants. | Case No. 23-cv-1676-BAS-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND (ECF No. 16)** |

## I. BACKGROUND

According to the First Amended Complaint ("FAC"), Plaintiff Dean Knuth is a California resident. (FAC ¶ 1, ECF No. 4.) Defendant George Thurner is a resident of Ohio or Kentucky. (FAC ¶¶ 4–5.) Thurner is the founder, President, and CEO of two Cap Patrol LLCs—one formed in Ohio and one in Kentucky—which together Knuth refers to as "Cap Patrol." (FAC 1:2–6.) Knuth does not allege who the members of the LLCs are or what their residences are. He alleges a Zoom link for Cap Patrol said it had a corporate office in Sacramento. (FAC ¶ 10.)

In 1998, Knuth invented the Tournament Point System and Flighted Events Using the Tournament Point System ("Flighted System"), which together Knuth calls the "Sandbagging Systems." (FAC ¶¶ 4, 31–40.) The Sandbagging Systems "identify golfers

who play well below their abilities to achieve a higher USGA handicap which then significantly increases their ability to earn one of a gold club's top five places based solely on an amateur golfer's performance in amateur golf handicapped 'tournaments.'" (FAC ¶ 2.) Knuth published this Sandbagging System on his website on September 17, 1998. (FAC ¶ 39.)

In 2022, Defendant Thurner claimed to have identified a system, which he marketed through his Cap Patrol companies, that identified sandbaggers "because the USGA's sandbagging system was not effective in preventing the existing sandbaggers from standing on the gold club's winner podium." (FAC ¶¶ 42–44.) The FAC claims Thurner's system does not work; it falsely identifies individuals as sandbaggers and fails to identify some who were sandbaggers. (FAC ¶¶ 45–49.) In Cap Patrol's marketing, it used Knuth's name, saying his Tournament Point System was "part of our system." (FAC ¶ 54.) But, in fact, the FAC says the only "sandbagging system" Cap Patrol offered on its website that worked was Knuth's Tournament Point System. (FAC ¶ 51.) As a result, Cap Patrol licensed the use of Knuth's Sandbagging Systems to golf clubs in California and San Diego County. (FAC ¶ 9.)

The FAC alleges Defendants did not have Knuth's permission to use his name to advertise, nor did they own Knuth's Tournament Point System. (FAC ¶¶ 59–62.) Golf clubs in California, including San Diego County, "purchased from Cap Patrol the right to use [Knuth's] Tournament Point System and/or Flighted System without [Knuth's] permission or consent." (FAC ¶ 68.) Cap Patrol acquired these golf club customers, located in California and San Diego County, by advertising or through personal visits to its California customers. (FAC ¶ 14.)

Based on these allegations, Plaintiff brings causes of action for: (1) Unauthorized Use of His Name Pursuant to California Civil Code § 3344; (2) Copyright Infringement Under 17 U.S.C. § 501; (3) Misappropriation of the Sandbagging System, (4) Fraudulent Denial of Use of Plaintiff's Sandbagging Systems; and (5) Trademark Infringement. (FAC

¶¶ 82–128.) Defendants move to dismiss. The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).

## II. ANALYSIS

### A. Rule 12(b)(1) Standing

A challenge under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests whether a complaint alleges sufficient grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this case, Defendants mount a facial attack against Plaintiff's case by contending the facts in the FAC are insufficient to establish standing. (ECF No. 16.) For purposes of this analysis, therefore, the Court must assume the allegations in the FAC are true. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

"To have Article III standing to sue in federal court, plaintiff[] must demonstrate, among other things, that [he] suffered a concrete harm. No concrete harm, no standing." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] [has] standing." *Id.* at 430–31.

In *Spokeo v. Robins*, the Supreme Court indicated "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. 330, 341 (2016)). That is, generally the plaintiff must allege a physical harm, monetary harm, reputational harm, intrusion upon seclusion, disclosure of private information, or the like. *Id.* at 423.

Congress's views may be instructive, and "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory

prohibition or obligation." *TransUnion*, 594 U.S. at 425. "But even though Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* (citations omitted). "Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo*, 578 U.S. at 341).

Thus, in *Spokeo*, the fact that Congress provided for statutory damages of $750–$1000 for violations of the Fair Credit Reporting Act of 1970 did not mean that simply alleging a violation of the statute without alleging an injury was sufficient for standing. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341.

Standing is a claim-by-claim analysis. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

### 1.     Count One—California Civil Code § 3344

California Civil Code § 3344 entitles an individual to recover both damages as well as any profits from the unauthorized use of his name from any person who knowingly uses his name for the purpose of advertising. Thus, to establish standing for a violation of § 3344, Plaintiff must allege an injury from Defendants' use of his name. *See, e.g.*, *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 783524, at *4 (N.D. Cal. Mar. 1, 2021) (analyzing Article III standing for § 3344 claim); *see also* Cal. Civ. Code § 3344(a) (imposing liability where "persons [are] injured as a result thereof").

Although the allegations in Count One suggest Knuth may have been injured, it is unclear exactly what Knuth is claiming these injuries are. Is he alleging that, by using Knuth's name, Cap Patrol was able to market a fraudulent system, which presumably could have resulted in reputational damage to Knuth? Or is he alleging that somehow Thurner

and Cap Patrol stole the information that Knuth published on his website and made a profit off of his ideas by using his name? Is Knuth alleging that the unauthorized use of his name resulted in lost profits to him? Or it led to unjust enrichment to Defendants? Plaintiff does not answer these questions in his Opposition. Instead, Plaintiff simply relies on the fact that § 3344 provides for statutory damages. (ECF No. 19.)

As *Spokeo* makes clear, simply relying on statutory damages is not enough to establish Article III standing. 576 U.S. at 341. Plaintiff must identify what concrete harm he is alleging occurred. If he is alleging that Defendants received profits as a result of the unauthorized use of his name, he must say so. If he is claiming he lost profits from the unauthorized use of his name, he must say so. If he is claiming the use of his name resulted in reputational harm, he must explain what that reputational harm is. Without allegations addressing Plaintiff's injury, the Court cannot assess Article III standing. Moreover, beyond this hurdle, Plaintiff must provide sufficient information to give Defendants' notice of the basis for his claim of harm. *Cf. DuraPharms, Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("[T]he 'short and plain statement' [required by Federal Rules of Civil Procedure, Rule 8(a)(1)] must provide the defendant with 'fair notice of what the Plaintiff's claim is and the grounds upon which it rests.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Without these allegations, it is unclear whether standing exists.

### 2. Counts Two and Five—Copyright and Trademark Infringement

Similarly, Plaintiff fails to allege what harm he suffered as a result of the alleged copyright and trademark infringement. As discussed above, Defendants are entitled to have notice as to whether this infringement allegedly caused Plaintiff reputation harm, caused him to lose profits, or resulted in unjust enrichment to Defendants. Although the statutes prohibiting copyright and trademark infringement provide for statutory damages, simply alleging a violation of the statute is insufficient. *See Spokeo*, 576 U.S. at 341.

### 3. Count Three—Misappropriation

Plaintiff alleges Defendants misappropriated his Sandbagging Systems after he posted the system on his website, resulting in injury. (FAC ¶¶ 102–04.) Specifically,

Plaintiff alleges that because he has been unable to monitor Defendants' use of his Sandbagging Systems, he has been unable to prevent any misapplication of his systems "in order to protect his reputation and the reputation of his Sandbagging Systems" and "to control how his system was being used." (FAC ¶ 104.)

However, noticeably missing from these allegations is any claim that he has been actually injured. He claims he has been unable to monitor Defendants' use of his systems and that he wishes to so monitor to protect his reputation. However, he fails to allege that his reputation has been damaged, his systems have been misapplied, or any other allegation explaining how he has been injured as a result of this misappropriation.

"[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, at 435. But, although an allegation of risk of future harm may be sufficient for injunctive relief, it is not necessarily sufficient to bestow standing to seek damages. *Id.* at 436. Furthermore, any allegations of risk of harm in the future must be more than just speculative to support Article III standing. *Id.*

The allegations in Count Three, alleging only potential risk of future harm, are insufficient to establish standing to seek damages. Furthermore, although Plaintiff also seeks injunctive relief, the allegations must be more than just speculative that his systems might have been misapplied and his reputation might be harmed by this potential misapplication. To succeed on an injunctive relief claim, Plaintiff must allege how the potential harm is "imminent and substantial." And Plaintiff must adequately inform the Defendants how he has been harmed or how he anticipates he will be harmed without an injunction. The allegations in Count Three fail to provide that notice.

**4.      Count Four— Fraudulent Denial of Use of Sandbagging Systems**

In response to a demand letter sent by Plaintiff's attorney, Plaintiff claims Defendants' attorney wrote back that "we don't use [Knuth's] system. We came up with our own that adjusts players actual GHIN index not their handicap for home events." (FAC ¶¶ 106–16.) Plaintiff claims this statement was false. However, Plaintiff fails to allege

- 6 -

23cv1676

any injury as a result of this statement supposedly made between lawyers and not to the public. Because Plaintiff alleges no harm as a result of this alleged statement, he fails to allege standing under Article III.

Because Plaintiff fails to allege adequate harm to establish standing, the Court **GRANTS** Defendants' Motion to Dismiss based on lack of standing. Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Because the Court finds Plaintiff could amend to clarify what concrete damages he is seeking, the Court will allow Plaintiff to amend. Although the Court is dismissing the case for lack of standing, in the interest of judicial efficiency and to guide the parties with the amended Complaint and future motions, the Court addresses some of Defendants' additional grounds for moving to dismiss below.

### B. Personal Jurisdiction

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor." *Nissan Motor Co., Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1155.

There are two types of personal jurisdiction: general and specific. *See Daimler AG*, 571 U.S. at 127–28. "Since *International Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." *Daimler AG*, 571 U.S. at 128 (alteration in original) (citation omitted).

### 1. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A., v. Brown,* 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (quotation omitted). "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

### 2. Specific Jurisdiction

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws, (2) the cause of action arose out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "'Bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG, LLP*, 476 F.3d 756, 766 (9th Cir. 2007). "But uncontroverted allegations

[in the complaint] must be taken as true," and any conflicts between the parties should be resolved in the plaintiff's favor. *Ranza v. Nike*, 793 F.3d 1059, 1068 (9th Cir. 2015).

"If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

With respect to the first two prongs, two additional factors must be considered. First, "the relationship must arise out of contacts that the defendant *himself* creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted, emphasis in original). Second, the defendant's contacts must be with the forum state itself, not with the persons who reside there. *Id.*

"[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the state—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* at 285. Furthermore, "[s]pecific personal jurisdiction requires a showing of forum-related activities of the defendant that are related to the claim asserted." *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 921 (C.D. Cal. 2015) (citing *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993)). It is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 519 (citation omitted); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("[T]he minimum contacts analysis examines the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (citation omitted)).

"Each defendant's contacts with the forum state must be assessed individually." *Davis v. Metro*, 885 F.2d 515, 521 (9th Cir. 1989) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). An employee's contacts with the forum state are not to be judged by the employer's activities there. *Id.* But the court may allow assertions of personal jurisdiction

over officers of a corporation without offending notions of constitutional due process "as long as the court finds those officers to have sufficient minimum contacts with [the forum state]." *Id.* at 522.

Plaintiff does not allege general jurisdiction against Defendants. The FAC alleges that Thurner is a resident of Ohio and Kentucky (FAC ¶¶ 4–5), that Cap Patrol Ohio is an Ohio LLC, and that Cap Patrol Kentucky is a Kentucky LLC (FAC 2:2–3). There is no information about the citizenship of the LLCs' members or where the principal place of business for these LLCs is. Although Plaintiff alleges "Cap Patrol" has a corporate office in Sacramento (FAC ¶10), Plaintiff fails to distinguish whether he is referring to the Ohio LLC, the Kentucky LLC, or both. Thus, Plaintiff fails to allege sufficient facts to establish general jurisdiction over any of Defendants.

With respect to specific jurisdiction, Plaintiff alleges that Cap Patrol licensed the use of Knuth's Sandbagging Systems to golf clubs in California and San Diego County. (FAC ¶ 9.) Plaintiff also alleges that golf clubs in California, including San Diego County, "purchased from Cap Patrol the right to use [Knuth's] Tournament Point System and/or Flighted System without [Knuth's] permission or consent." (FAC ¶ 68.) Finally, Plaintiff claims Cap Patrol acquired these golf club customers, located in California and San Diego County, by advertising or through personal visits to its California customers. (FAC ¶ 14.) However, Plaintiff fails to distinguish between the two Cap Patrol Defendants. He lumps them together. Therefore, it is not clear from the FAC whether there are allegations that both Cap Patrol, an Ohio LLC, and Cap Patrol, a Kentucky LLC, licensed Knuth's sandbagging systems in California and sold these systems in San Diego County by advertising and personal visits to California, or only one of these LLCs did so. Since the allegations fail to distinguish between the defendants, it is unclear whether there are sufficient allegations amounting to personal jurisdiction against both Cap Patrol defendants or only one. *See Cisneros v. TransUnion*, 293 F. Supp. 2d 1156, 1163 (D. Hawai'i 2003) ("[P]laintiff must establish personal jurisdiction over each defendant individually." (citing *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990))).

With respect to Defendant Thurner, Plaintiff alleges Thurner "is the founder, President, and Chief Executive Officer" of both Cap Patrol LLCs. (FAC ¶ 4.) Additionally, Plaintiff alleges Thurner approved the language referring to Plaintiff's Tournament Point System on Cap Patrol's website, which was then used to market to San Diego customers. (FAC ¶¶ 4, 14.) Finally, in the FAC, Plaintiff alleges Thurner made sales presentations to California golf clubs by Zoom or in person. (FAC ¶ 12.) Although not strong, these allegations are more than "bare bones" factual allegations or legal conclusions. Assuming they are true, as the Court must at this point, Plaintiff has alleged sufficient facts to show that Thurner purposely availed himself of the privilege of conducting activities in the forum. Further, since Plaintiff's claims arise from marketing materials that allegedly falsely depicted his involvement in the system being marketed in San Diego, he alleges that the claims arose, at least in part, out of Defendant's forum-related activities. Defendant Thurner fails to make any case that exercise of jurisdiction over Defendant would be unreasonable.

Therefore, in any amended complaint, Plaintiff must distinguish between the two Cap Patrol Defendants and outline what each did that establishes specific jurisdiction in the Southern District of California. Plaintiff has sufficiently alleged personal jurisdiction against Defendant Thurner.

### C. Venue

For purposes of a copyright action, venue is proper "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (citing 28 U.S.C. §1400(a)), *reversed on other grounds by Feltner v. Columbia Pictures*, 523 U.S. 340 (1998). Therefore, as discussed above, Plaintiff must distinguish between the Cap Patrol Defendants, but he has alleged sufficient facts to establish venue over Thurner for the copyright cause of action.

### D. Rule 12(b)(6)

Defendants move to dismiss all five causes of action under Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). Further, the court need not accept as true "legal conclusions" contained in the complaint. *Id*. This review requires context specific analysis involving the court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Id*. At the very least, a complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

### 1. Count One: Unauthorized Use of Plaintiff's Name in Violation of California Civil Code § 3344

Section 3344 of the California Civil Code prohibits use of another's name for advertising purposes. To establish a violation of § 3344, the plaintiff must allege: (1) defendants knowingly used his name in any manner; (2) "on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services"; (3) without his consent. Cal. Civ. Code § 3344(a); *see also Gionfriddo v. Major League*, 94 Cal. App. 4th 400, 409 (2001).

Defendants argue Plaintiff's claim under section 3344 fails because it falls within the "public affairs" exception to § 3344 and the alleged publication does not qualify as commercial speech. (ECF No. 16.) These arguments are interrelated.

With respect to the "public affairs" exception, specifically excluded from § 3344 is the "use of a name . . . in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d). Thus, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). "To balance a plaintiff's privacy and publicity rights against the public's free speech interest in dissemination of news and information, courts must consider 'the nature of the precise information conveyed and the context of the communication.'" *Scott v. Citizen Watch Co. of Amer., Inc.*, No. 17-cv-436-NC, 2018 WL 1626773, at *5 (N.D. Cal. Apr. 4, 2018) (quoting *Gionfriddo*, 94 Cal. App. 4th at 410). "The determinative inquiry for whether the public interest exception applies to commercial speech is whether a defendant's use of a plaintiff's identity is the commercial product itself, or is instead used to promote some other tenuously related product." *Id*.

Furthermore, courts have recognized that merely referencing an individual's name in connection with a commercial product—without the express aim of transacting—does not amount to commercial speech. *Hoffman v. Cap Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) (holding magazine photograph identifying model as wearing Ralph Lauren shoes was not commercial speech). And discussing an individual of great interest to the public "is a form of expression due substantial constitutional protection." *Gionfriddo*, 94 Cal. App. 4th at 411. Defendants argue Knuth is such an individual of great interest to the public and that the alleged communications did not have the express aim of transacting and thus are not commercial speech.

Defendants' arguments are particularly ill-suited to the Rule 12(b)(6) stage. The Court must examine not only the information conveyed but the context of the communication. At this point, nothing in the FAC suggests that the information conveyed, which Plaintiff alleges was done to sell and advertise Defendants' products, was conveyed to promote some other tenuously related product or because of great public interest in Plaintiff or his system. In fact, Defendants' argument ignores many of the allegations in the FAC. For example, the FAC claims that Defendants used Plaintiff's name and the name of his system to advertise their system to their customers in California. (FAC ¶¶ 9, 14, 66.) There are allegations that Defendants used Plaintiff's name to sell their services on their website and to promote Cap Patrol products. (FAC ¶¶ 54, 60.) At this point, the Court must accept the allegations in the FAC as true.

Thus, assuming Plaintiff can establish standing, venue, and personal jurisdiction, the Court finds he has sufficiently alleged a cause of action in Count One.

### 2. Count Two: Copyright Infringement in Violation of 17 U.S.C. § 501

In order to establish a cause of action for copyright infringement, plaintiff must allege: (1) ownership of the alleged infringed work and (2) copying of the protected elements of work by the defendant. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Although Plaintiff alleges he has a copyright for the Tournament Point

System and that Defendants have copied this system, it is unclear from the FAC what he has copyrighted. (FAC ¶¶ 97, 98, Exs. 7–8.)

Defendants correctly point out that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery." 17 U.S.C. § 102(b).  Thus, courts in the past have found that golf handicap systems are "not the type of subject matter for which copyright protection is available." *U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 622–23 (1999).   If all Plaintiff is claiming is that he has a copyright over a handicap system or an idea of how to handicap, this is insufficient.  In any Amended Complaint, Plaintiff must explain what literary, graphic, artistic description, explanation, or illustration of this system he is relying on to claim a copyright.   To the extent Plaintiff is claiming that Defendants have copied the text of his Tournament Point System, there must be allegations supporting this claim.  Instead, Plaintiff alleges Defendants infringed on his "systems."  Such a claim is not cognizable under copyright law.

### 3.     Count Three: Misappropriation of the Sandbagging Systems

Common law misappropriation "is normally invoked in an effort to protect something of value not otherwise covered by patent or copyright law, trade secret law, breach of confidential relationship, or some other form of unfair competition." *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 842 (9th Cir. 2004) (quoting *U.S. Golf Ass'n*, 69 Cal. App. 4th at 618).  It requires allegations that (1) plaintiff invested substantial time, skill, or money in developing the system, (2) defendants appropriated and used plaintiff's system at little or no cost, (3) defendants' appropriation and use was without the authorization or consent of plaintiff, and (4) plaintiff has been injured by this use. Plaintiff has alleged the first three of these elements.  As discussed above, it is unclear how he is alleging he was injured.  But otherwise, the Court finds the cause of action has been sufficiently alleged.

### 4. Count Four: Fraudulent Denial of Use of Plaintiff's Sandbagging Systems

In Count Four, Plaintiff alleges that, in response to a demand letter sent by his attorney, Defendants' attorney wrote back that "we don't use [Knuth's] system. We came up with our own that adjusts players' actual GHIN index not their handicap for home events as [Knuth's] does." (FAC ¶107.) Plaintiff alleges this statement, made by Defendants' lawyer in response to his lawyer's demand letter, was false and misleading. (FAC ¶¶ 109–16.)

Under California Civil Code § 47(b), a communication is subject to the litigation privilege if the communication is one made in a judicial proceeding. "It applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action." *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005) (citing *Silberg v. Anderson*, 50 Cal. 3d 205, 2015 (1996)). "This privilege is absolute, not qualified." *Id.*

"[T]he privilege 'applies to prelitigation communications as well as those occurring during the course of actual litigation.'" *Id.* (quoting *Nguyen v. Proton Tech. Corp.*, 69 Cal. App. 4th 140, 147 (1999)). Thus, it applies to demand letters sent in anticipation of litigation. *Lerette v. Dean Witter Org'n, Inc.*, 60 Cal. App. 3d 573, 575 (1976). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

According to the FAC, the objected-to communication was made in response to a demand letter, requesting that Defendants do certain things and pay Plaintiff a certain amount of money to avoid litigation. Defendants' lawyer responded to the demand letter with the objected-to statement. Thus, the statement was made in anticipation of litigation, by an attorney authorized to represent the potential litigants, to achieve the objects of the potential litigation, and the statement has a direct connection to the ensuing litigation. Hence, the litigation privilege applies, and the Count must be dismissed. Although the

Court is granting Plaintiff leave to amend his allegations with respect to standing, the Court finds it unlikely Plaintiff can avoid this litigation privilege in any amended complaint. Nonetheless, in an abundance of caution, the Court grants Plaintiff leave to amend this count.

### 5. Count Five: Trademark Infringement

Trademark infringement requires plaintiff to allege: (1) protectable ownership interest in a mark and (2) defendant's use of the mark is likely to cause customer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1039 (N.D. Cal. 2015). "The use of a competitor's trademark for purposes of comparative advertising is not trademark infringement so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *SSP Agric. Equip., Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir. 1979); *see also Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (finding no trademark infringement where complaint lacked allegations demonstrating a reasonable consumer would have believed the plaintiff sponsored or endorsed the defendant's seminar).

Plaintiff alleges that he has an ownership interest in the trademark "Tournament Point System" to identify his sandbagging system. (FAC ¶ 119.) However, to the extent he is attempting to use trademark law to prevent Defendants from copying or incorporating his system, this claim fails—like the copyright claim discussed above. *See, e.g., Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 300 (9th Cir. 1979) (explaining why trademark law does not protect an "idea, system or product" from being copied).

Plaintiff also alleges that Defendants made reference to his Tournament Point System to promote their differently named sandbagging system without his consent. (FAC ¶ 122.) He points to part of Defendants' website that claims its product incorporates Plaintiff's system as one of several "Known Areas" that Defendants monitor for sandbagging. (*Id.* ¶ 123.) Missing, however, are factual allegations that plausibly show

consumers in the relevant marketplace would be confused by this reference. *See Underwriters, Inc.*, 913 F.3d at 897. In the trademark context, "[c]ourts have long recognized that one who has lawfully copied another's product can tell the public what he has copied." 3 McCarthy on Trademarks and Unfair Competition § 25:52 (5th ed. 2024); *see also Smith v. Chanel, Inc.*, 402 F.2d 562, 569 (9th Cir. 1968) (reasoning "that in the absence of misrepresentation or confusion as to source or sponsorship a seller in promoting his own goods may use the trademark of another to identify the latter's goods"). In addition, Plaintiff includes the conclusory allegation that Defendants' agreement with golf club customers falsely provides "explicitly or implicitly that Cap Patrol had a lawful right to" use Plaintiff's Tournament Point System. But again, the system itself is not protected by trademark law. *See Anti-Monopoly*, 611 F.2d at 300. Plaintiff must plausibly allege consumers would have believed Plaintiff sponsored or endorsed Defendants' service.

Hence, Plaintiff's trademark claim lacks plausibility. Any amended complaint must include sufficient allegations to support consumer confusion.

## III.   CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss for lack of standing with leave to amend. Plaintiff is ordered to file any amended complaint no later than **June 24, 2024**. In that Second Amended Complaint, Plaintiff must allege what relief he is seeking and how he has been injured. Any amended Complaint should also: (1) distinguish between the two Cap Patrol Defendants and allege how each defendant has subjected itself to personal jurisdiction in California. (2) allege sufficient facts to support his allegation of copyright or trademark infringement and (3) explain why the litigation privilege is not applicable to Count Four.

Plaintiff is reminded that any amended complaint must comply with Civil Local Rule 15.1. The Second Amended Complaint "must be complete in itself without any reference to the superseded pleading" or any attachments or exhibits to that earlier pleading. Civ. L.R. 15.1(a). Additionally, "[a]ny amended pleading must be accompanied by a version of that pleading that shows—through redlining, underlining, strikeouts, or other similarly

1  effective typographic methods—how that pleading differs from the previously dismissed
2  pleading." Civ. Loc. R. 15.1(c).
3      **IT IS SO ORDERED.**

5  **DATED: June 10, 2024**

                                             Hon. Cynthia Bashant
                                             United States District Judge